IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

PAMELA MURPHREE, )
)
        Plaintiff, )
)
v. ) Case No. 10-4122-WEB
)
UNITED STATES OF AMERICA, )
and )
EUGENE MCNUTT, )
)
        Defendants. )

MEMORANDUM AND ORDER

This matter comes before the court on the defendants' Motion to Dismiss (Doc. 6). For the reasons set forth below, the defendants' motion is granted.

I. <u>Facts</u>

1. On June 9, 2001, Eugene McNutt, an employee with the United States Postal Service, while driving a USPS vehicle, rear-ended a vehicle owned and operated by Pamela Murphree. (Doc. 9-1, p. 11-14).

2. McNutt admitted fault, and was cited for Inattentive Driving. (Doc. 9-1, p. 13).

3. On June 15, 2008, Murphree filled out Standard Form 95 (SF-95). (Doc. 6-1, p. 7-8).

4. On Form 95, Murphree wrote in "0" in Section 12a., for amount of Property Damage. (Doc. 6-1, p. 7-8).

5. In Section 12b, for amount of Personal Injury, Murphree wrote "bruising of ribs neck and back strain." She did not write a dollar amount. (Doc. 6-1, p. 7-8).

6. In Section 12c, titled "Wrongful Death," Murphree wrote "0". (Doc. 6-1, p. 7-8).

7. Along with the SF 95, Murphree provided two estimates to the USPS. One estimate

1

lists the value of the car at $2025.00, another estimate lists the value of the car at $2025.00, unless it was in very good condition, then the value would be $2995.00. (Doc. 9-1, p. 16, 17).

8. On June 25, 2008, USPS wrote a letter to Murphree. The letter contained the following language:

> Enclosed please find a check in the amount of $1825.00 ($200.00 deducted for salvage)[1], made payable to you as full and final settlement of the claim filed on behalf of the above-referenced claim.
> Acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the U.S. Postal Service, or any employee whose act or omission gave rise to the claim by reason of the same subject matter. Any subrogation claims, liens, or any outstanding indebtedness resulting from this incident, must be satisfied from the proceeds of this check.

(Doc. 6-1, p. 10).

9. Check number 0305930106, dated June 23, 2008, was endorsed to Pamela Murphree, for the amount of $1825.00. (Doc. 6-1, p. 12).

10. The check was cashed by Murphree, and cleared the bank before the end of June. (Doc. 6-1, p. 4).

11. On June 8, 2009, USPS sent a letter to Murphree's attorney, stating that the instructions on SF-95 stated that "If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form." The letter also states that the letter of release and Murphree's acceptance of the check bars recovery of any additional or future claims. (Doc. 6-1, p. 16).

12. On December 8, 2009, Murphree's attorney sent another letter to USPS, stating that Murphree's medical bills related to the accident to date are $41,234.52, and her pain and

---

[1] Neither party has provided any information regarding the salvage cost, or disclosed how this information was provided to the USPS.

2

suffering is $100,000. (Doc. 6-1, p. 18).

13. On February 24, 2010, the USPS sent a letter to Murphree's attorney, again stating that Murphree's additional claims are barred as she cashed the check, which operated as a complete release of any future claims. (Doc. 6-1, p. 20).

14. On June 3, 2010, Murphree filed another SF-95 with the USPS. In section 12b, she stated the amount of Personal Injury was $550,000.00. (Doc. 6-1, p. 24-25).

15. On June 30, 2010, in a letter to Murphree, the USPS stated that "cashing of a settlement check constitutes a full release of any and all claims arising from the same incident and bars consideration of any further claims. Therefore, we do not have the authority to pay any additional amount and Pamela Murphree's supplemental claim cannot be considered." (Doc. 6-1, p. 27).

II. Controverted Facts

1. Murphree states that she did not fill in Section 12d in SF-95, titled "Total." The copy of the form provided by the defendant (See Doc. 6-1, p. 7-8), has the amount of $2,025.00 written in the box. In the copy provided by Murphree, section 12d is blank. (Doc. 9-1, p. 2-4).

2. The declaration of Sheila Gleason, Kansas Tort Claims Coordinator for the Cental Plains District, claims the form she received from Murphree was completely filled out, including Section 12d. Ms. Gleason states that neither she nor any other employee completed Section 12d, as they are trained to not correct, delete or add anything to an SF-95. Ms. Gleason further states that if the form was incomplete, she would have returned it to Murphree to complete.

3. Murphree, in her affidavit, states that the letter referred to a release regarding "the same subject matter," and she believed that this refereed only to the claim for damage to the

automobile. (Doc. 9-1, p. 2-4).

    4. Murphree also stated in her affidavit that she believed her claims for personal injury and medical expenses would be settled at a later time, separately from the automobile damage claim. (Doc. 9-1, p. 2-4).

III. <u>Defendant's Motion</u>

Defendants request dismissal of Eugene McNutt as an improper party, and dismissal of the complaint for lack of subject matter jurisdiction, or in the alternative, summary judgment as a matter of law.

IV. <u>Standard of Review</u>

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be made as a facial attack, or a factual attack. <u>Holt v. United States</u>, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial attack on the complaint questions the sufficiency of the complaint. <u>Id.</u>, citing <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th Cir. 1990). The allegations in the complaint are accepted as true in a facial attack. <u>Id.</u> In a factual attack, the party challenges the facts upon which subject matter jurisdiction depends. <u>Id.</u> In a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, and the court has wide latitude to review outside evidence to determine subject matter jurisdiction. <u>Id.</u>

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." <u>Sutton v. Utah State School for the Deaf & Blind</u>, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting <u>Miller v. Glanz</u>, 948 F.2d 1562, 1565 (10th Cir. 1991)). Furthermore, "all well-pleaded factual allegations in the complaint are

accepted as true and viewed in the light most favorable to the nonmoving party." Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). Documents attached to the complaint are considered as part of the pleadings. Tal v. Hogan, 453 F.3d 1244, 1264 n. 24 (10th cir. 2006).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must look for "plausibility in the complaint." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). Under this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The possibility that plaintiff could prove some facts in support of the pleaded claims is insufficient; the court must believe the plaintiff has a reasonable likelihood of showing factual support for the claims. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The plaintiff must "nudge his claims across the line from conceivable to plausible" in order to survive a motion to dismiss. Bell Atlantic Corp., 550 U.S. at 1974.

V. Discussion

a. Eugene McNutt

Defendants requests dismissal of Eugene McNutt, as he is an employee of the federal government, and was acting within the scope of his employment. Therefore, the only proper defendant is the United States. See 28 U.S.C. § 2679. Murphree agreed that dismissal of McNutt was appropriate. Defendants' Motion to Dismiss Eugene McNutt from the action is granted.

b. Subject Matter Jurisdiction

Defendants argue that the court does not have jurisdiction over Murphree's claims as her

5

administrative claim to the agency was not denied.  Defendants argue Murphree's claim was accepted, and Murphree's second administrative claim was not allowed as the settlement was final.  Murphree argues that there is no valid administrative claim related to her personal injury in the initial SF-95.  Murphree argues she presented her personal injury claim to the agency in her second SF-95, filed on June 3, 2010.

28 U.S.C. § 2675 governs jurisdictional requirements.

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to take final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.  28 U.S.C. § 2675(a).

In Adams v. United States, 1999 WL 1059680 (W.D.Va., March 3, 1999), affirmed by Adams v. United States, 201 F.3d 435 (4th Cir. 1999) (Table), plaintiff was involved in an automobile accident with an employee of the FAA, in which he sustained both personal injury and property damage.  Adams listed the dollar amount of his property damage, and listed his personal injury as "unknown."  He signed the form, and sent in 2 estimates of the property damage.  A paralegal assisted Adams in reaching a settlement.  Although Adams claimed over $4,000.00 in property damage, the agency sent Adams a check for $1,800.00.  The agency voucher contained a release, which constituted "a complete release by me (us) of any claim against the United States and against the employee of the Government."  Adams later filed a claim for personal injuries, which was denied as the claim was barred based on the release.

The Court in Adams found that "Adams cannot prevail against the United States because

6

he objectively manifested an intent to settle all of his claims arising from the accident. At best, he has demonstrated a unilateral mistake on his part that is insufficient to preserve his personal injury claim." Id. at * 2. The Court granted the United States' motion to dismiss.

In Domingo v. Allen, 28 F.3d 105 (9th Cir. 1994) (Table), plaintiff brought suit against the United States Post Office, arguing that acceptance of payment for property damage from the agency did not constitute a waiver of later claims under the FTCA. Plaintiff also argued that the waiver was not knowing and voluntary. The court granted the United States' motion for summary judgment, ruling that plaintiff's claim was barred by 28 U.S.C. § 2672, because he accepted a settlement of his claim from the agency. Id. at *1. The Court found it undisputed that the acceptance of payment from the agency settled his claim, which resulted in a waiver of any future claims. Id..

In Huber v. United States, 244 F.Supp. 537 (D.C.Cal., June 24, 1965), the plaintiff wrote "Still under doctor's care," in the personal injury section of the form, but a specific dollar amount in the property damage section. The agency sent her a check which she accepted. The Court found "the government was justified and, as the Court reads Section 2672, required to offer an amount in settlement of the entire claim. It did so by tendering the amount allocated by the claimant for property damage on condition it be received in settlement of the whole claim." Id. at 538.

Finally, in Wright v. United States, 427 F.Supp. 726 (D.C.Del. 1977), plaintiffs were involved in a vehicle accident with a postal employee. Plaintiff filed an administrative claim for a specific dollar amount of property damage, along with two estimates, and a claim of undetermined amount for personal injuries. The form was sent back to the plaintiffs, as it failed

7

to specify an amount for personal injuries, and it was not signed by the plaintiffs. Plaintiffs then submitted their claim, specifying a dollar amount for personal injury and property damage. The total claim was more that $1,000.00, the amount allowed at that time for agency approval and summary claim adjudications. After finding out that the claim would not be settled immediately, plaintiffs amended their claim so the total amount came under $1000.00. Plaintiffs then attempted to file another claim for pain and suffering, loss of consortium, and additional property damage. The Court found the suit was foreclosed by the prior payment, as the payment was in full satisfaction of any claim against the defendant. Id. at 729. The Court went on to find it possible that the plaintiffs "misunderstood the legal ramifications of accepting a settlement award even though the ramifications were clearly delineated in the standard claim form" and in the letter from the agency. Id. The Court also found it possible that the plaintiffs "understood the legal consequences but ... did not 'intend' to surrender the claims for pain and suffering and loss of consortium." The court found that either way, the claims by the plaintiffs did not vitiate the release. Id.

Murphree relies on Robinson v. United States Navy, 342 F.Supp. 381 (D.C.Pa. 1972), in support of the argument that the original claim, as submitted, was not complete, and therefore was not valid. In Robinson, plaintiff was involved in a car accident with a U.S. Navy vehicle. Plaintiff filled out form 95, listing the amount for property damages, but listing personal injury as "unknown." The plaintiff did not provide property damage estimates, medical bills, or insurance information. The form was returned to plaintiff's attorney. The form was resubmitted, insurance information was provided, although no other requested information was included. The Court found that plaintiff did not file a proper administrative claim. Id. at 384. The Court found

"the information ... omitted from ... Form 95 was necessary to allow the administrative agency to evaluate the claim. A claim which does not set out the amount of damages sought is not a claim. ... there was no definite amount claimed for personal injuries, and no medical records or bills to support such a claim....the requirement that a definite amount be stated must be applied to the claim as a whole, and not merely to a part of it. The amount of litigation would not be cut down by administrative disposal of half a claim.... the agency should not be asked to settle half a claim, without some idea of the extent of the other half." Id. at 383.

In the case at hand, the initial SF-95 was submitted by Murphree within a week of the accident. Section 8 states "Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof)." Murphree wrote, "See attached accident report, my 1989 Park Avenue Ultra was hit from behind by postal driver." Section 10 asks for the "nature and extent of each injury or cause of death, which forms the basis of the claim." Murphree wrote "See accident report, neck, back and head injury." In Section 12a, titled Property Damage, Murphree wrote "0". In Section 12b, titled Personal Injury, Murphree wrote "bruising of ribs neck and back strain." Section 12d is titled "Total" and includes the following information in parentheses, "Failure to specify may cause forfeiture of your rights." Under Section 12, but above the signature line in Section 13, the form contained the following statement, in bold, capital letters:

> **I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.**

The second page of the SF-95 contained the following language:

> A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.
>
> If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.
>
> The amount claimed should be substantiated by competent evidence as follows:
> (a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.
> (b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.
> (d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations occurred may render your claim "invalid." A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.
> **Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

In Section 16, Murphree wrote that she had filed a medical bills claim with her insurance carrier.

In Section 17, in response to the question, "If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim?" Murphree responded "medical bills and lost wages."

After Murphree submitted the SF-95 to the Post Office, she received a check for $1825.00. The United States Postal Service enclosed a letter with the check. The letter contained the following language:

10

> Enclosed please find a check in the amount of $1825.00 ($200.00 deducted for salvage), made payable to you as full and final settlement of the claim filed on behalf of the above-referenced claim.
> Acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the U.S. Postal Service, or any employee whose act or omission gave rise to the claim by reason of the same subject matter. Any subrogation claims, liens, or any outstanding indebtedness resulting from this incident, must be satisfied from the proceeds of this check.

In light of the above cited case law on section 2675, the court is without jurisdiction to consider Murphree's claims. The SF-95 notified Murphree, in bold, capital letters, that acceptance of a claim resulted in full and final settlement of the claim. SF-95 also notified Murphree that a claim for personal injury must be included in the form. The United States Post Office sent a check and a letter to Murphree. The letter contained a release, which notified Murphree that by accepting payment, she waived any future claims. Murphree had the opportunity to accept or reject the settlement. Murphree accepted the offer. Acceptance of the check constituted full satisfaction of the settlement.

Robinson is not as helpful as Murphree would lead the court to believe. Robinson only addressed the requirements of a valid claim. The Court in Robinson did not consider a release, or whether the acceptance of a check would have any effect on an invalid claim. Even if the court was to find the claim submitted by Murphree was an invalid claim, Murphree accepted the check presented by the agency. "The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter." 28 U.S.C. § 2672. Acceptance of the settlement offer is final and conclusive, and Murphree cannot now argue that she failed to file a valid claim, and she is not bound by the release.

This court finds that the analysis in Wright v. United States, 427 F.Supp. 726 (D.C.Del. 1977), is applicable here. Like Wright, it is possible that Murphree misunderstood the legal ramifications of accepting and cashing the check. It is also possible that Murphree did not intend to surrender her claim for personal injury. However, neither of these scenarios change the effect of the release. By accepting the check, Murphree agreed to waive any other claims against the Post Office arising from the vehicle accident. The United States' motion to dismiss is granted.

VI. Conclusion

IT IS THEREFORE ORDERED, for the reasons set forth above, that defendant Eugene McNutt be dismissed from the case.

IT IS FURTHER ORDERED, for the reasons set forth above, that defendant United States' Motion to Dismiss (Doc. 6) is GRANTED.

IT IS SO ORDERED this 20th day of May, 2011.

  s/ Wesley E. Brown
Judge Wesley E. Brown
Senior District Court Judge